UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| TOTAL CONTAINMENT, INC. | : | |
| Debtor | : | Bankruptcy No. 04-13144bf |

| | | |
|---|---|---|
| CANAM GROUP, INC. | : | |
| Plaintiff | : | |
| v. | : | |
| TCI ENVIRONMENT NV/SA | : | Adversary No. 06-0647 |
| Defendant | : | |

.................................................

MEMORANDUM

.................................................

Presently before me are cross-motions for summary judgment filed by the

plaintiff and the defendant.  In its amended complaint, Canam Group, Inc., in its capacity

as purported assignee of claims from Canam Steel Corporation, alleges that TCI

Environment NV/SA ("TCIE")[1] was a co-maker of promissory notes to Bank of America

("BOA") that Canam Steel guaranteed.  After TCIE and its co-borrowers defaulted,

Canam Steel allegedly repaid the loan obligation of TCIE in the amount of

$4,678,124.89.  Canam Group now seeks to recover from defendant TCIE the entire

guarantee payment made to BOA.  It asserts in its amended complaint two alternative

---

[1]TCI Environment NV/SA, occasionally referred to as TCI Europe, was renamed
Delaware Valley Enterprises NV after its assets were sold pursuant to court order dated July 6,
2006.  In the amended complaint and the parties' summary judgment motions the defendant is
often referred to as TCIE and I shall do the same.

counts: Count I for contribution or reimbursement, and Count II for unjust enrichment. The plaintiff contends that both claims should be determined by relying upon the laws of the State of Maryland, consistent with the choice of law provisions found in the loan agreements, promissory notes and guarantee contract.

Defendant TCIE contests both claims for numerous reasons. It disputes that Canam Steel repaid BOA the amount it now demands in its amended complaint. It also challenges the plaintiff's purported assignment from Canam Steel. TCIE further maintains that the unjust enrichment claim is barred by the statute of limitations. It also argues that the contribution and reimbursement claim was waived when BOA and the trustee for the chapter 11 debtor, Total Containment, Inc. (TCI), entered into a settlement, which settlement contained, inter alia, a release of TCIE from BOA's claim.

Moreover, the defendant, which is a Belgian corporation, denies that it legally obligated itself to borrow funds from BOA, based upon Belgian law. Instead, it asserts that BOA loaned funds only to the chapter 11 debtor, TCI, which owned 99% of the stock of TCIE. TCIE maintains that it received no benefit from that loan to its parent corporation and that the persons who signed the documents did so without the knowledge or consent of TCIE's Board of Directors and acted against the interests of TCIE.

Finally, TCIE contends in the alternative that if it has any obligation to pay Canam Group, it would be only in the capacity of "co-surety," thus limiting any amount due to contribution among various parties to the loan agreements and notes. TCIE Amended Memorandum, at 28-29.

2

In support of their respective summary judgment motions (and in opposition to the other party's motion), Canam Group and TCIE have submitted numerous documents, affidavits and memoranda.  They debate the meaning of Belgian corporate law and its relevance to this adversary proceeding, as well as the legal effect of the claim release given by BOA to TCIE upon the Canam Steel loan guarantee.  They also contest the admissibility of certain documents relied upon by TCIE for summary judgment purposes.

For the following reasons, I conclude that material facts are in dispute, thereby precluding summary judgment for either party.

## I.

Based upon my review of the affidavits, deposition transcripts and exhibits, the following facts appear undisputed.

On December 14, 1999, TCI and BOA entered into a loan agreement for $5 million.  Amended Complaint, Ex. A.  This loan agreement involved a revolving line of credit.  Id., ¶ 2.  TCI, the borrower, was identified as a Pennsylvania corporation located in Oaks, Pennsylvania.  Id.  All notices to BOA were to be sent to an address in Frederick, Maryland.  Id.  This agreement had a choice of law provision selecting Maryland law.  Id.  Mr. Keith Ruck signed this agreement on behalf of TCI and identified himself as corporate vice-president for finance as well as chief financial officer.  Id.

The loan agreement referred to a promissory note of the same date. This promissory note, in the amount of $5 million, matured on June 30, 2001. Canam Motion for Summary Judgment, Ex. 2. The payee was BOA located in Frederick, Maryland. The borrowers were identified as TCI, Rene Morin, Inc. ("RMI"), American Containment, Inc. ("ACI") and TCIE. Id. All the borrowers were made jointly and severally liable. This promissory note identified Maryland law as governing, and that the co-borrowers consented to personal jurisdiction in the state and federal courts of Maryland. Id. Mr. Ruck signed the note on behalf of all four borrowers. He signed as corporate secretary on behalf of TCIE, RMI and ACI.

TCIE also executed a security agreement in favor of BOA, with Keith Ruck again signing on behalf of TCIE as corporate secretary. The other borrowers, TCI, RMI and ACI, executed similar security agreements on the same date also signed by Mr. Ruck. Amended Memorandum of Law of [TCIE], App. I, Ex. VII(b); see Amended Memorandum of Law of [TCIE], App. I, Exs. VII(a), (c), and (d). These security agreements also contained choice of law provisions favoring Maryland law.

Moreover, on December 14, 1999, Canam Steel signed a "guaranty and indemnification agreement" in favor of BOA. Canam Ex. 4. This agreement stated that BOA "intends to provide a certain line of credit" not to exceed $5 million to TCI and "three (3) of its subsidiaries [including TCIE] . . . for the purpose of financing certain working capital of the Borrowers." Id. Canam Steel is identified as a "preferred stockholder" of TCI that is "desirous that the Borrowers obtain the Loan from the Bank."

4

Id.  This guarantee also provided that it was to be construed and interpreted using

Maryland law.  Id.[2]

TCIE's directors signed a "Consent in Lieu of Special Meeting of the

Board of Directors of TCIE" on December 13, 1999.  Amended Complaint, ¶ 6 Ex. B;

Answer, ¶ 6.  This document stated: "RESOLVED, that the Secretary of the Corporation

may negotiate the terms of and enter into such agreements and take such actions as

necessary in connection with a credit facility with Bank of America."  Id.  This document

was signed by Francois Meersemann, John R. Wright, Jr., Jeffrey Boehmer, Pierre

Desjardins, and Mr. Ruck.  Id.

On March 31, 2000, the loan agreement between TCI and BOA, dated

December 14, 1999, was modified.  TCIE, Appx. I, Ex. I(b).  The document was signed

by Mr. Ruck on behalf of TCI.  Id.  A second loan modification agreement between TCI

and BOA was signed on April 14, 2000, with Mr. DesJardins acting on behalf of TCI.

TCIE, Appx. I, Ex. I(c).  These modifications incorporated almost all of the terms of the

---

[2]The Canam Steel guarantee was of an absolute, rather than a contingent nature.
"A guaranty is a collateral promise to answer for the debt or obligation of another. . . .  An
unconditional guaranty is one by which the guarantor promises, without condition, payment or
performance of the principal contract on default of the principal debtor.  FBS AG Credit, Inc. v.
Estate of Walker, 906 F. Supp. 1427, 1430 (D. Colo. 1995) (citation omitted); see Moore, Owen,
Thomas & Co. v. Coffey, 992 F.2d 1439, 1449 (6th Cir. 1993).  Upon the default of the principal,
an absolute guarantor is liable to the creditor and may not compel the creditor to proceed first
against the principal.  See First Pennsylvania Bank, N.A. v. Scarpati, 1990 WL 156661, *3 (E.D.
Pa. 1990).

original loan agreement, including the choice of law provision, but the second modification referenced an increased line of credit of $7 million.[3]

On April 14, 2000, a promissory note was executed in the amount of $7 million, naming TCI, TCIE, RMI and ACI as borrowers and BOA as lender. Amended Memorandum of Law of [TCIE], App. I, Ex. II(b). "Renewal" is checked at the top of the document and it recites the same maturity date, June 30, 2001, as the December 14, 1999 Promissory Note. Id.[4] Again, Mr. Ruck signed on behalf of all four borrowers, and identified himself as secretary for TCIE. Maryland law was made applicable to this new note. Id.

Also on April 14, 2000, Canam Steel Corporation and BOA entered into a new Guaranty and Indemnification Agreement in connection with the $7 million loan. Amended Complaint, ¶ 9 Ex. D; Answer, ¶ 9. Mr. Bernard Gouin signed the Agreement on behalf of Canam Steel. Id. Maryland law was made applicable to this new guarantee. Id.

A "Third Modification of Loan Agreement" was signed on March 29, 2001. Amended Memorandum of Law of [TCIE], App. I, Ex. I(d). This Agreement stated that it modified the December 14, 1999 loan agreement (as modified by

---

[3]The First Modification had decreased TCI's required maintenance of net worth from $6.25 million to $5 million, while the Second Modification further decreased this requirement to $4 million. Id. In addition, the Second Modification recited that the borrower and lender had previously agreed to increase the principal loan amount to $7 million. Amended Memorandum of Law of [TCIE], App. I, Ex. I(c), "Whereas" paragraph. Only TCI and BOA were parties to these modifications.

[4]This Note authorized the automatic payment of monthly sums due by debiting account #003931033729 MD. Id., at ¶ 6. The summary judgment record does not disclose the owner or location of this account. The last two letters, however, suggest that the account may be located in Maryland.

6

agreements dated March 21, 2000 and April 14, 2000, already discussed), to add TCIE,

RMI and ACI as borrowers.  Id., at ¶ 2.  It also amended the 1999 loan agreement to

increase the loan amount to $7 million, and it decreased TCI's tangible net worth

requirement to $2 million.  Id.  This Note was again signed on behalf of TCIE by Mr.

Wright as vice president (who also signed on behalf of ACI).  Id.

On March 29, 2001, TCI, TCIE, RMI and ACI entered into another

"renewal" Promissory Note for $7 million payable to BOA, with a maturity date of April

1, 2002 and retaining the express applicability of Maryland law.  Amended

Memorandum of Law of [TCIE], App. I, Ex. II(c).  Mr. Wright signed the note on behalf

of TCIE as vice president.  Id.

On May 11, 2001, TCI, TCIE, RMI, ACI and BOA entered into an

additional "renewal" Promissory Note.  Amended Complaint, ¶ 11 Ex. F; Answer, ¶ 11.

This note increased the line of credit to $8 million and extended the maturity date to

October 1, 2002.  Id.  The note was signed on behalf of TCIE by Mr. Wright as vice

president.  Id.  The last page of the note contains a signed statement by Canam Steel

"ratify[ing] and confirm[ing] its continuing guarantee of the Borrower's payment and

performance obligations under the Note and the other Loan Documents, pursuant to the

terms and provisions of that Guarantee and Indemnification Agreement dated March 29,

2001, by the undersigned in favor of the Bank."  Id.  The parties did not provide a copy

of the March 29th guarantee agreement in connection with these summary judgment

motions.

On June 20, 2001, TCIE executed a document styled "Certification of

Corporate Resolution."  See Amended Complaint, ¶ 7, Ex. C; Answer, ¶ 7.  This

7

document purported to authorize Mr. Wright and Thomas P. Kennedy, or either one of them, to borrow on behalf of TCIE, including "all such acts, transactions or agreements undertaken by any officer of Company prior to the date of these Resolutions. . ." id., thus intending to grant retroactive authorization.  The document was signed by Mr. Wright as director and Mr. Kennedy as vice president, and was witnessed by the secretary of the company [illegible signature].  Id.[5]  This Certification of Corporate Resolution appears to be a form provided by Bank of America.  Similar corporate resolution forms, also dated June 20, 2001, were executed by TCI, RMI, and ACI.  See Amended Memorandum of Law of [TCIE], App. I, Exs. V(a)-(d), Exs. VI(a)-(c).

On October 1, 2002, TCI, TCIE, RMI, ACI and BOA executed a Modification Agreement Modifying Interest Rate and Extending Maturity Date Under Promissory Note.  Amended Complaint, ¶ 11, Ex. G; Answer, ¶ 11.  This Modification Agreement modified the May 11, 2001 promissory note to extend the maturity date to December 1, 2002, which it recited was secured by the December 14, 1999 Security Agreement and guaranteed by Canam Steel's April 14, 2000 and March 29, 2001 guaranty agreements.  See id.  The modification was signed on behalf of TCIE by Mr. Kennedy, vice president of finance.  Id.  Mr. Kennedy also signed this modification on behalf of TCI, ACI and RMI.  Canam Steel also signed the modification and in so doing, sought to confirm and ratify its earlier guarantee.  Id.

---

[5]In summary, Mr. Ruck signed loan documents for TCIE on December 14, 1999 and April 14, 2000; Mr. Wright signed for TCIE on March 29, 2001 and May 11, 2001; and Mr. Kennedy signed from October 1, 2002 through September 30, 2003 (specifically, October 1, 2002, December 1, 2002, February 1, 2003, May 1, 2003 and September 30, 2003).

A similar modification agreement was entered into by TCI, TCIE, RMI, ACI and BOA on December 1, 2002, extending the maturity date of the promissory note until February 1, 2003.  Id.  The modification agreement again was signed on behalf of TCIE and all other borrowers by Mr. Kennedy, vice president of finance.  Id.  No ratification of guarantee by Canam Steel is attached to this exhibit.

On the February 1, 2003 maturity date, the parties modified the May 11, 2001 promissory note again.  Amended Complaint, ¶ 11, Ex. G; Answer, ¶ 11.  This agreement extended the maturity date of the note to May 1, 2003, and reduced the line of credit from $8 million to $7.75 million.  Id.  It similarly recited that the May 11, 2001 promissory note had modified the March 29, 2001 promissory note, and that the May 11, 2001 promissory note had been modified by the October 1, 2002 modification agreement. Id.  It also recited that it was guaranteed by Canam Steel's April 14, 2000 and March 29, 2001 guaranty agreements, and it was signed on behalf of TCIE and all other borrowers by Mr. Kennedy, vice president of finance.  Id.  Canam Steel also signed the modification and in so doing, sought to confirm and ratify its earlier guarantee.  Id.

Onset of the May 1, 2003 maturity date yielded yet another modification of the promissory note as well as a Fourth Modified Loan Agreement.  Amended Complaint, ¶¶ 10-11, Exs. E, G; Answer, ¶¶ 10-11.  These modifications, signed by the borrowers, specified a $7.75 million credit line and a maturity date of September 30, 2003, with certain interest payments due prior to maturity.  It also added a security requirement as follows: the co-borrowers were to "make, and/or cause" Canam Steel to make three deposits to BOA of $500,000 on May 30, 2003, June 30, 2003 and August 15, 2003.  Id.  In addition, the co-borrowers were to execute and cause "its affiliates"

9

Finloc, Inc. and Finloc Capital, Inc. to execute as of May 1, 2003 an "intercreditor and subordination agreement" stating that all debt owed by the borrowers, and any security interests granted, to either Finloc corporation would be subordinate to that granted by BOA. Id., at ¶ 19. Both modifications were signed by Mr. Kennedy on behalf of all borrowers, and Canam Steel also signed the note modification to ratify its guarantee. Id.

On May 1, 2003, TCI, TCIE, ACI and RMI executed an Amended and Restated Security Agreement with BOA. Amended Complaint, ¶ 12, Ex. H; TCIE App. I, Ex. III(e). This agreement stated that it amended and replaced the December 14, 1999 security agreements, as amended. Id. The agreement was signed on behalf of TCIE by Mr. Kennedy, vice president of finance. Id.

On September 30, 2003, all of the borrowers and BOA executed a Modification Agreement Extending Maturity Date Under Promissory Note, decreasing the line of credit to $6.25 million and extending the maturity date of the May 11, 2001 promissory note to October 31, 2003. Amended Complaint, ¶ 11, Ex. G; Answer, ¶ 11. Mr. Kennedy, vice president of finance, signed the agreement on behalf of TCIE and all other borrowers. Id. Canam Steel signed this note modification and ratified its guarantee.

BOA declared the loan in default by demand letter dated December 29, 2003, signed by John P. McDuffie, Senior Vice President. Amended Complaint, ¶ 13, Ex. I; Answer, ¶ 13. This letter was addressed to TCI, TCIE, RMI, and ACI, c/o John Wright, at TCI's Oaks, Pennsylvania, address, and copied to "Canam Steel Corporation, guarantor." The letter references the May 11, 2001 Promissory Note in the original principal amount of $8,000,000, as may have been modified, but does not provide a current amount due (or daily interest rate). See id. Further, Mr. McDuffie stated in the

10

letter that he understood that "you are in the process of attempting to sell the remaining

North American operations as well as the European operations, with the purpose of

retiring the Note from the proceeds from any transaction(s).  The Bank is willing to

consider a forbearance agreement which would allow you additional time to complete the

potential transaction."  Id.[6]

   Thereafter, on March 30, 2005, "pursuant to BOA's demand and Canam

Steel's obligations under the Guaranty Agreement," Canam alleges it paid BOA

$4,678,124.89.  Amended Complaint, ¶ 18.  Canam Group supports its allegation of

payment with two affidavits and certain documents.  First, by affidavit dated May 1,

2006, Mary K. Gordon, Vice President of Administration and Corporate Controller for

Canam Steel, declared that Canam Steel paid BOA $28,329,324.88, which included the

$4,559,700.89 plus $118,424.00 in attorneys' fees and expenses (totaling $4,678,124.89),

pursuant to the Guaranty and Indemnification Agreement dated April 14, 2000, as

amended, and a payoff letter dated March 29, 2005 from BOA stating the outstanding

balance due.  Canam Group Opposition to TCIE, Ex. 24, ¶¶ 3, 5-7.  She stated that by

letter dated March 30, 2005, Canam Steel had instructed GMAC/CF to advance the

payoff amount to BOA.  Id., at ¶ 8.  Ms. Gordon also averred that Canam Steel and BOA

---

[6]In the amended complaint, Canam Group alleges that Canam Steel's guarantee was modified in May 2004, September 2004 and January 2005.  Amended Complaint, ¶ 15.  It attached various documents to this complaint, which documents involved agreements among Canam Steel, Caman Manac Group, Inc. (n/k/a Canam Group, Inc.) and BOA.  See Ex. J.  These documents make reference to a promissory note in the amount of $18 million dated October 2001, as well as to various guarantee obligations, including those concerning the $8 million TCI loan agreement.  TCIE denied the authenticity of these agreements.  Answer, ¶ 15.

  In its motion for summary judgment, Canam Group does not rely upon these documents.  TCIE contends though that Canam Steel's obligation to BOA was much greater than $8 million.  As will be discussed, there are inferences that can be drawn from certain documents supporting TCIE's contention.

executed an Assignment dated July 19, 2005 wherein BOA acknowledged that Canam Steel had satisfied its obligation to BOA under the Guaranty Agreement.  Id., ¶¶ 9-10.

Though Ms. Gordon's affidavit references a payoff letter, Canam Steel's instruction letter to GMAC/CF, and an assignment agreement as attached to her affidavit, none are so attached by Canam Group.  TCIE however submitted a copy of the affidavit with the referenced exhibits.  See Amended Memorandum of Law of [TCIE], App. VII, Ex. 4.  These exhibits include an assignment of rights dated July 19, 2005 between BOA and Canam Steel in which the former assigns to the latter "rights under the Loan Documents as to TCI only. . . ."  Id., Ex. 3.

Also included is a copy of the March 29, 2005 payoff letter from BOA to Canam Steel as well as Canam Steel's payment instructions dated March 30, 2005 to GMAC Commercial Finance LLC.  The former letter specified that $28,329,324.88 was owed by Canam Steel and due by March 30, 2005.  Of that balance, the letter directed that $27,710,900.88 be paid to BOA-Charlotte CSA/CCS and $618,424.00 paid to BOA, N.A. in Baltimore, Maryland.  Canam Steel's letter instructed GMAC to pay $26,710,900.88 to BOA-Charlotte, $618,424.00 to BOA, N.A., $103,989.50 to Talon Group, and $150,000 to GMAC/CF.

In other words, it is possible that BOA received $1 million less than its demanded payoff sum for reasons not explained.  See also Amended Memorandum of Law of [TCIE], App. V, Ex. 15 (Gordon Deposition, July 2007, at 74-75).  Moreover, there is no record on summary judgment documenting the appropriate allocation of the $27,329,324.88 received by BOA concerning the various loans guaranteed by Canam Steel.

12

A second affidavit, this one executed by John P. McDuffie as Senior Vice President of Bank of America, N.A., was also submitted by Canam Group in support of its payment allegation.  As Ms. Gordon had, Mr. McDuffie swore that BOA provided a payoff letter, dated March 29, 2005, containing the outstanding balance of Canam Steel's payment obligations to BOA.  Canam Group Opposition to TCIE, Ex. 29, ¶ 4.  The payoff letter is attached to Mr. McDuffie's affidavit.  See Ex. 1 to Ex. 29.  This letter indicates that, among other amounts, $4,559,700.89 was due on the "Guaranty of obligations of Total Containment, Inc. to Bank."  Id., p. 4.  It also set a payment date of March 30, 2005. Id., p. 3.

Mr. McDuffie also declared in his affidavit that on March 30, 2005, Canam Steel paid the $4,559,700.89 due through GMAC Commercial Finance LLC.  Canam Group Opposition to TCIE, Ex. 29, ¶ 5.

Prior to this payoff, on March 15, 2005, the bankruptcy trustee for TCI, George L. Miller, and BOA reached a settlement of claims that BOA asserted against TCI and that TCI asserted against BOA.  Among its terms, BOA released TCI, TCIE, RMI, and ACI from liability on the promissory notes and loan agreements mentioned above.  Expressly excepted from the scope of this release was BOA's claim under the Canam Steel guarantees.  Miller Affidavit (April 17, 2006) (Ex.1, ¶ 3.2).

Finally, by "purchase agreement" dated August 29, 2005, Canam Steel sold to Canam Group a portion of its receivables valued at $6 million.  Amended Memorandum of Law of [TCIE], App. IV, Ex. 18.  This document, which states that it is to be construed under Canadian law, refers to Canam Steel's obligation to BOA of up to $8 million on the "TCI Loan" and for $12 million on the "Finloc US Loan."  Id.  It further

13

stated that Canam Steel paid BOA $10,050,000 as "final payment on all sums in principal

due to the Bank in connection with the TCI Loan and the Finloc US Loan." Id. This sum

is referred to as "the Receivables." Id. The agreement does not allocate the portion of the

receivables sold to Canam Group.


II.


Federal Rule of Bankruptcy Procedure 7056 incorporates Fed. R. Civ. P.

56, the summary judgment rule, into bankruptcy adversary proceedings. Summary

judgment avoids the expense and delay of an unnecessary trial when no material facts are

in dispute and one of the parties is entitled to prevail on the merits. See, e.g., Goodman v.

Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038

(1977). The standard for determining the applicability of summary judgment under Rule

56 is well established. As the Third Circuit Court of Appeals observed:

> Summary judgment is appropriate when the moving party is
> entitled to judgment as a matter of law and there is no genuine
> dispute of material fact. . . .  In order to defeat "a properly
> supported summary judgment motion, the party opposing it
> must present sufficient evidence for a reasonable jury to find
> in its favor." Groman v. Township of Manalapan, 47 F.3d
> 628, 633 (3d Cir. 1995) (citing Anderson v. Liberty Lobby,
> Inc., 477 U.S. 242, 250-52, 106 S. Ct. 2505, 2511-12, 91 L.
> Ed. 2d 202 (1986)). In essence, the non-moving party must
> demonstrate a dispute over facts that might affect the outcome
> of the suit. Id. Moreover, in reviewing the record, we must
> give the non-moving party the benefit of all reasonable
> inferences. . . .

Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir. 1996).


14

The application of these general principles is affected by the allocation of the evidentiary burden of persuasion were the dispute to proceed to trial. That is, a trial court's approach to summary judgment is influenced by whether the party seeking summary judgment would have the burden of persuasion at trial. See generally Coquellette, et al. 11 Moore's Federal Practice 3d, §§ 56.03[4], 56.13[3] (2006). This approach was well summarized in Adams v. Consolidated Rail Corp., 1994 WL 383633, at *1-*2 (E.D. Pa. 1994):

> The Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court held that where the movant is the defendant, or the party without the burden of proof on the underlying claim, the movant still has the initial burden of showing the court the absence of a genuine issue of material fact, but that this does not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. Id. at 323. In contrast, where, as here, "the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent." National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). To sustain its initial burden under such circumstances, the movant must:
>
> > "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."
>
> Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). . . . If the movant makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact . . . .

15

(citations omitted); accord In re White, 243 B.R. 498, 501 n.4 (Bankr. N.D. Ala. 1999).

Thus, "[w]hen, as here, the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden. The nonmoving party creates a genuine issue of material fact if he provides sufficient evidence to allow a reasonable jury to find for him at trial." Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).

As noted earlier, in applying the above-mentioned standard for summary judgment, "[the court must] view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see also Wetzel v. Tucker, 139 F.3d at 383 n.2; Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir.), cert. denied sub nom. Pennsylvania Secretary of Public Welfare v. Idell S., 516 U.S. 813 (1995); Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 200 (3d Cir. 1995); Goodman v. Mead Johnson & Co., 534 F.2d at 573.  Moreover, the moving party bears the burden of proving that no genuine issue of material fact is in dispute.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).  Once the movant has carried its initial burden, however, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Id. at 587 (quoting Fed. R. Civ. P. 56(e)).  As explained by the Third Circuit:

> At the summary judgment stage of proceedings, if the movant —in this case the Defendants—can point to the absence of any factual support for one of [the] essential elements [of the complaint], then the non-movant, bearing the burden of persuasion at trial, must introduce specific facts showing a

16

> need for trial, pursuant to Fed. R. Civ. P. 56(e).  See Celotex,
> 477 U.S. at 322-24, 106 S. Ct. 2548.  If the non-moving party
> fails to go beyond conclusory allegations in its pleadings and
> to produce specific facts indicating that there is a genuine
> issue for trial, summary judgment will be granted in favor of
> the moving party.

Annulli v. Panikkar, 200 F.3d 189, 198-99 (3d Cir. 1999) (overruled on other grounds by

Rotella v. Wood, 528 U.S. 549 (2000)) (citations omitted).

### III.

Before analyzing the facts to determine whether either party is entitled to

summary judgment relief as a matter of law, I need consider the relevant law for Canam

Group's claims and TCIE's defenses.  There are multiple choices in this adversary

proceeding proceeding if based solely upon the location of the parties to the various loan

documents: Canam Steel, the original guarantor, is a Delaware corporation with its

principal place of business in Maryland; TCIE is a Belgian company; TCIE's parent

corporation, TCI, is a Pennsylvania corporation; purported assignee Canam Group is a

Canadian corporation; the other co-borrowers, ACI and RMI, are Delaware corporations;

and BOA, the lender, did business in Maryland.

If, however, one focuses upon the loan documents at issue, all contained

Maryland choice of law provisions.[7]  The loan agreement also provided that notices to

the lender be sent to its Maryland address.  The promissory notes contained venue

---

[7]The July 2005 assignment agreement between BOA and Canam Steel expressly
provided that the document was to be construed by Maryland law.

provisions specifying Maryland.  Payment on the notes was by automatic withdrawal from an account whose number ended in "MD."  Consistent with this venue provision, this proceeding was originally filed in Maryland state court, but, via removal, transfer, and referral, is now pending in a bankruptcy court sitting in Pennsylvania as related to the chapter 11 bankruptcy case of TCI, the parent company of TCIE.

As for the parties, plaintiff Canam Group argues that Maryland law applies to all claims and defenses because the loan documents contain a choice of law provision specifying Maryland law.  See, e.g., Memorandum in Support of Canam Group's Motion for Summary Judgment, at 5.  For example, the December 14, 1999 Loan Agreement (which was modified by agreement dated March 29, 2001 to add TCIE as a co-borrower) provides the following choice of law provision:

> B. Applicable Law.  This Loan Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted in accordance with the laws of Maryland and applicable United States federal law.

Amended Complaint, Ex. A, ¶ 10(B).  The Promissory Note of December 14, 1999, which includes TCIE as a borrower, states:

> 13. Applicable Law, Venue and Jurisdiction.  This Note and the rights and obligations of Borrower and Bank shall be governed by and interpreted in accordance with the law of the State of Maryland.  In any litigation in connection with or to enforce this Note or any indorsement or guaranty of this Note or any Loan Documents, Obligors, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Maryland or the United States located within the State of Maryland and expressly waive any objections as to venue in any such courts.  Nothing contained herein shall, however, prevent Bank from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

18

Amended Memorandum of Law of [TCIE], App. I, Ex. II(A), ¶ 13.  And similarly, the

original Guaranty Agreement, dated December 14, 1999, to which Canam Steel was

bound in favor of BOA, provides:

> Section 6.(E) Applicable Law.  This Guaranty Agreement,
> having been executed, sealed and delivered in the State of
> Maryland, shall be interpreted and construed in accordance
> with and governed by the laws of the State of Maryland,
> without regard to principles of conflict of laws, and this
> Guaranty Agreement shall be regarded as a specialty under
> seal.

Amended Memorandum of Law of [TCIE], App. I, Ex. III(A).

For its part, TCIE argues that different forums' laws apply to the different

legal issues it has raised.  Regarding the statute of limitations applied to Canam Group's

unjust enrichment claim, Count II, TCIE contends that this court should apply the

limitations period of the law of the forum state, Pennsylvania.  Amended Memorandum

of Law of [TCIE] in Support of Motion for Summary Judgment, at 33, n.121.  Perhaps

recognizing that Pennsylvania's borrowing statute may apply Maryland's statute of

limitations, and because Canam argued that Maryland law applies, TCIE discussed the

issue for purposes of its summary judgment motion as if Maryland law applied.  Id., at

34, n.121.

In arguing that Canam Group's claims are barred because they were

released by BOA's settlement with TCI's bankruptcy trustee, TCIE relies upon sections

of the Restatement of Suretyship, which it maintains is followed by both Pennsylvania

and Maryland courts.  See Amended Memorandum of law of [TCIE], at 29.

However, when it comes to the validity of the loan documents between

BOA and TCIE, including the latter's corporate authority to enter into the loan

transactions, TCIE argues this court should look exclusively to Belgian law. Id., at 40-
46; Memorandum of Law of [TCIE] in Opposition to Canam Group's Motion for
Summary Judgment and in Further Support of its Motion for Summary Judgment, at 11.
TCIE contends that even if this court were to apply state law to determine the question of
the validity of the promissory notes, both Pennsylvania and Maryland law would direct
the court to apply Belgian law to this issue, arguing that the question involves the
internal affairs of a foreign corporation. See Reply of [TCIE] to Opposition to its
Motion for Summary Judgment, at 11. TCIE states: "In this case, all the conflicts of law
roads lead to the Kingdom of Belgium because the issue of whether TCI Europe had the
requisite corporate capacity (and received the requisite corporate benefit) to guarantee the
loan to TCI is a matter of Belgian 'public order' which exceeds any interest Maryland or
Pennsylvania could have in the dispute between TCI Europe and Canam Group."
Memorandum of Law of [TCIE] in Opposition, at 11, n.28.[8]

       In non-core proceedings (such as this one) which involve parties from
different states, bankruptcy courts typically apply the choice of law rules of the state in
which the court sits, as a district court would do in diversity litigation. See, e.g., In re
Nantahala Village, Inc., 976 F.2d 876, 880-881 (4th Cir. 1992); In re Payroll Express
Corp., 216 B.R. 344, 353 (S.D.N.Y. 1997), aff'd, 186 F.3d 196 (2nd Cir. 1999), cert.
denied sub nom., Pereira v. Aetna Casualty & Surety Co., 529 U.S. 1019 (2000); In re
B.S. Livingston & Co., 186 B.R. 841, 863 (D.N.J. 1995); Ifert v. Miller, 138 B.R. 159,

_____

[8]TCIE's alternative argument that federal common law should govern this dispute,
see Reply of [TCIE] to Opposition to its Motion for Summary Judgment, at 7-11, is
unpersuasive, as TCIE's citations concerned disputes construing bankruptcy law issues, while
this proceeding involves two non-core claims.

164 n.8 (E.D. Pa. 1992); In re Eagle Enters., Inc., 223 B.R. 290, 292 (Bankr. E.D. Pa.

1998); see generally Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487

(1941) (when a federal court has subject matter jurisdiction based upon diversity, the

federal court should apply the conflicts of laws rules of the forum state).  Such non-core

adversary proceedings generally will not implicate any federal policies, so that a

bankruptcy court should apply the choice of law rules of the state in which the court sits.

See In re Lett, 238 B.R. 167, 199 (Bankr. W.D. Mo. 1999), aff'd, 2001 WL 43614 (8th

Cir. 2001); see also SEC v. Elmas Trading Corp., 683 F. Supp. 743, 748 (D. Nev. 1987)

(recognizing that the Klaxon approach applies "to cases founded upon federal question

jurisdiction where state law controls the issue to be decided"), aff'd, 865 F.2d 265 (9th

Cir. 1988) (table).

> Thus, I start with Pennsylvania's choice of law principles.

> Pennsylvania courts enforce valid contractual choice of law provisions.

See Gay v. CreditInform, 2007 WL 4410362, at *15 (3d Cir. 2007); In re Global

Industrial Technologies, Inc., 333 B.R. 251, 257 (Bankr. W.D. Pa. 2005); Cottman

Transmission Systems, LLC v. Kershner, 492 F. Supp. 2d 461, 466 (E.D. Pa. 2007).  As

the Third Circuit has explained: Pennsylvania courts have adopted section 187 of the

Restatement (Second) Conflict of Laws, which provides that choice of law provisions

will be enforced, unless either "(a) the chosen state has no substantial relationship to the

parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy

of a state which has a materially greater interest than the chosen state in the determination

of the particular issue. . . ."  Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d

Cir. 1994).

Indeed, in transactions governed by the Uniform Commercial Code,

Pennsylvania has enacted section 1-105(a), which provides:

> a) General rule.--Except as otherwise provided in this section,
> when a transaction bears a reasonable relation to this
> Commonwealth and also to another state or nation the parties
> may agree that the law either of this Commonwealth or of
> such other state or nation shall govern their rights and duties.
> Failing such agreement this title applies to transactions
> bearing an appropriate relation to this Commonwealth.

Under these circumstances Pennsylvania would uphold the application of

Maryland law to this dispute, given the express provisions found in all of the agreements,

and the fact that both BOA (the lender) and Canam Steel are either located in or do

business in Maryland.  See Gay v. CreditInform, 2007 WL 4410362, at *16; AmQuip

Corp v. Pearson, 101 F.R.D. 332, 337 (E.D. Pa. 1984); Jaskey Finance and Leasing

Corp. v. Display Data Corp., 564 F. Supp. 160, 162 (E.D. Pa. 1983) (upholding a

Maryland choice of law provision); see also Krediebank N.V. v. P.T. Imports, Inc., 251

A.D. 2d 248, 249 (Sup. Ct. N.Y. 1998) (New York rather than Belgian law applied).

Even if the contractual provisions selecting Maryland law were not

enforceable, the result in this dispute would be the same.  Barring an effective

contractual choice of law, Pennsylvania courts next look to whether there is truly a

conflict between the candidate forums' laws, since if there is no conflict, there is no need

to select one over another.  Werner Enterprises, Inc. v. Trustees of the University of

Pittsburgh, 2006 WL 2583458, at *3 (W.D. Pa. 2006).  If there is a conflict,

Pennsylvania courts "'use the Second Restatement of Conflict of Laws as a starting

point, and then flesh out the issue using an interest analysis.'" Id. (quoting Berg Chilling Systems Inc. v. Hull Corporation, 435 F.3d 455, 463 (3d Cir. 2006)).  The interest analysis involves determining which state has "'the most significant contacts or relationships with the particular issue.'" PPG Industries, Inc. v. Central Industrial Maintenance, Inc., 2006 WL 752982, at *2 (W.D. Pa. Mar. 22, 2006) (quoting In re Estate of Agostini, 311 Pa. Super. 233, 457 A.2d 861, 871 (1983)).  Here, Maryland, of the possible various jurisdictions, has the most significant contacts in interpreting and enforcing the loan agreements.

Moreover, for the two causes of action raised by Canam Group and for a number of the defenses raised by TCIE, I find no meaningful distinction between the various sovereignties.  Both Pennsylvania and Maryland, for example, accept a theory of implied contract resulting in a right of reimbursement for a guarantor.  Bishoff v. Fehl, 345 Pa. 539 (1942) ("implied contract" arises between principal and guarantor that principal will indemnify guarantor for any payment made to the creditor); President and Directors of Georgetown College v. Madden, 505 F. Supp. 557, 591 (D. Md. 1980) (equitable right of guarantor, on payment of principal's debt, to be indemnified by the principal for loss sustained) (citing, A. Stearns, The Law of Suretyship § 11.36 at 510 (5th ed., Elder rev. 1951); Clagett v. Salmon, 5 G.&J. 314, 1833 WL 1331, at *8 (Md. 1833) (right of guarantor to remedies of creditor against principal recognized in common law and founded on implied contract).

Both states also recognize the equitable right of a guarantor to seek restitution for unjust enrichment from a principal for any payment the guarantor made to the creditor.  See United States v. Wilson, 478 F. Supp. 488 (M.D. Pa. 1979); Bishoff v.

23

Fehl; Etter v. Industrial Valley Bank and Trust Co., 356 Pa. Super. 502, 515 A.2d 6

(1986) (right of recovery is equitable in nature and based on preventing unjust

enrichment); National Surety Corp. v. Nulton, 55 Pa. D.&C. 149, 1946 WL 2458 (Pa.

Com. Pl. 1945) (duty to reimburse surety arises even without knowledge of principal of

surety contract, where principal becomes unjustly enriched); Hanley v. Mulleneaux, 192

Md. App. 592, 65 A.2d 325 (1949) (citing Clagett v. Salmon, 5 G.&J. 314, 1833 WL

1331, at *8).

Similarly, both Maryland and Pennsylvania recognize that a release of the

principal by a creditor does not relieve the principal of the obligation to reimburse the

guarantor if the creditor expressly retained its right to proceed against the guarantor.  For

example, the Pennsylvania Supreme Court instructed:

> At common law a surety was discharged of his obligation if
> and to the extent that the creditor voluntarily released the
> principal debtor from liability, unless the surety consented to
> such release or the creditor expressly reserved his rights
> against the surety.  First National Bank of Irwin v. Foster,
> 291 Pa. 72, 139 A. 609 (1927); Beaver Trust Co. v. Morgan,
> 259 Pa. 567, 103 A. 367 (1918); Boschert v. Brown, 72 Pa.
> 372 (1872); Schock v. Miller, 10 Pa. 401 (1849). See
> generally 10 S. Williston, a Treatise on the Law of Contracts
> § 1220 (3d ed. 1967).

Keystone Bank v. Flooring Specialists, Inc., 513 Pa. 103, 113, 518 A.2d 1179, 1184

(1986); see In re F.B.F. Industries, Inc., 165 B.R. 544, 552 (Bankr. E.D. Pa. 1994) (citing

Keystone Bank).

Maryland follows the Restatement of Security for this same proposition.

Chicago Title Ins. Co. v. Lumbermen's Mutual Casualty Co., 707 A.2d 913, 921, 120

Md. App. 538, 556 (1998).  That Restatement section provides:

> Where the creditor releases a principal, the surety is discharged unless
> (a) the surety consents to remain liable notwithstanding the release, or
> (b) the creditor in the release reserves his rights against the surety.

Restatement of Security (First), § 122 (1941). See Koehler v. Bank of Bemuda, Ltd., 2005 WL 551115, at *5 (S.D.N.Y. Mar. 9, 2005) (clear that Maryland has adopted section 122's doctrine into its caselaw). Under subsection (b) then, the release "is viewed only as a covenant by the creditor not to sue the principal." Chicago Title Ins. Co. v. Lumbermen's Mutual Casualty Co., 707 A.2d at 921; Warner Lambert Pharmaceutical Co. v. Sylk, 348 F. Supp. 1039, 1045 (E.D. Pa. 1971) (hornbook law that creditor's release of principal with surety's consent, while reserving rights against the surety, does not discharge surety, but surety can proceed against the principal for reimbursement).[9] Finally, as will be discussed below, both Pennsylvania and Maryland have adopted relevant provisions of the Uniform Commercial Code, Article 3, which address negotiable instruments.

Thus there is no actual conflict between Pennsylvania and Maryland law on the issues of reimbursement, contribution, restitution or releases. And TCIE does not suggest that these issues are governed in this adversary proceeding by Belgian law.

As for TCIE's corporate authority to enter into the loan agreements and promissory notes, TCIE contends that this court must apply Belgian law. Both parties submitted expert reports on Belgian law on this issue, in accordance with Federal Rule of

---

[9]Indeed, this approach recognizes that an agreement between a creditor and a principal cannot adversely affect the rights of the guarantor, unless the guarantor is a party to the agreement.

Evidence 44.1 (incorporated into bankruptcy by Fed. R. Bankr. P. 9017).  Canam Group

maintains, however, that Maryland law should govern, see Opposition to [TCIE's]

Motion for Summary Judgment, at 21-23, but also argued that even if Belgian law

applies, TCIE has not proved its defense of illegality.  Id., at 23-24.

TCIE, in turn, relies upon Maryland law solely for the precept that "the

corporate actions taken by TCI Europe to approve the execution of the Transaction

Documents constitute the internal affairs of TCI Europe, which must be governed by the

law of the place of the incorporation of TCI Europe."  Memorandum of Law of [TCIE]

in Opposition, at 11, n.28, citing Tomran, Inc. v. Passano, 891 A.2d 336, 346 (Md.

2006).  The internal affairs doctrine is a conflict of law principle that only one sovereign

should have the authority to regulate a corporation's internal affairs.  Storetrax.com, Inc.

v. Gurland, 168 Md. Sp. App. 50 (2006) (citation omitted).

On this subject, the Restatement (Second) of Conflicts § 309 proposes that

the local law of the state of incorporation should be applied "to determine the existence

and extent of a director's or officer's liability to the corporation, its creditors and

shareholders, except where, with respect to the particular issue, some other state has a

more significant relationship. . . ." at 371-72 (citation omitted).  The United States

Supreme Court has cited favorably to the Restatement's section 309 in observing that

"[s]tates normally look to the State of a business' incorporation for the law that provides

the relevant corporate governance general standard of care."  Atherton v. FDIC, 519 U.S.

213, 224 (1997).  As to shareholder suits against foreign corporations domiciled in

Pennsylvania, Pennsylvania law provides that the courts of Pennsylvania shall hear such

actions, applying the law of the jurisdiction under which the foreign domiciliary was incorporated. 15 Pa. C.S.A. § 4145.

Tomran dealt with a shareholder derivative suit: shareholders of an Irish parent company brought a derivative action in Maryland against the officers and directors of a Maryland bank owned by the Irish corporation through a holding company. The Maryland Court of Appeals held that the law of Ireland should apply to the derivative action as the internal affairs of the company were at issue. See also In re National Forge Co., 344 B.R. 340, 372 n.14 (W.D. Pa. 2006) (courts look to law of state of the formation of a corporation to resolve issues of the internal affairs of a corporation, citing 15 Pa. C.S.A. § 4145(a)). Thus, Maryland courts likely would apply Belgian law to a civil action between TCIE's shareholders and the individuals who executed loan documents on its behalf.

In this proceeding, TCIE extrapolates from those decisions regarding internal corporate affairs and contends that Belgian law should also apply to determine whether TCIE validly entered into a loan agreement with BOA. For purposes of these summary judgment motions, I need not decide whether TCIE's extrapolation of the internal affairs doctrine is correct.[10] If the signors of the promissory notes in favor of

---

[10]The Restatement (Second) of Conflict of Laws, § 292 (1971), instructs that a principal will be bound by its agent's actions "if he would so be bound under the local law of the state where the agent dealt with the third person. . . ." As to foreign corporations, 36 Am. Jur. 2d Foreign Corps. § 45 states that "[a] foreign corporation's powers depend not only upon the law of the state of its domicil, but also the local law in states in which it 'does business.' Thus, the forum state's law, i.e., the state where the corporation 'does business,' applies to the same extent as if the corporation was incorporated there."

Thus the relevancy of local law to a foreign corporation may turn on whether the corporation had sufficient contacts within the jurisdiction in connection with the particular

(continued...)

27

BOA had no actual authority to bind TCIE, Belgian law, as do the laws of Maryland and

Pennsylvania, recognizes that a finding of apparent authority can override any lack of

actual authority.

TCIE's Belgian law expert expressed this policy under Belgian law:

"However, it has been held that, in principle, this nullity [for lack of actual authority]

only concerns the <u>internal</u> effects of the decision.  A third party who, based upon such a

decision, has contracted with the NV [Belgian corporation], and who has acted in so

doing in <u>good faith</u>, will be able to assume that the NV has entered into a valid and

binding agreement.  In such a case, the nullity of the written decision will not be

opposable towards such a co-contracting party."  Amended Memorandum of Law of

[TCIE], App. VI, Ex. 1, Byttebier Expert Report, at 12 (¶ 23) (emphasis in original;

footnote in Dutch omitted).  Bad faith can arise where the contracting party knew or

should have known that the "organ of organic representation" [i.e., the Belgian

corporation's agent] exceeded its authority.  <u>Id.</u>, at 13 (¶ 24); <u>see also</u> <u>id.</u>, p. 17 (¶ 30).

Under Belgian law, this principle is called the "apparent mandate" doctrine.

The party seeking to enforce the transaction must prove:

> (1) an element of appearance;
> (2) that the creation of the appearance is due to the fault of
> action of the party creating the appearance of the mandate;
> and
> (3) the party relying on the apparent mandate did so
> reasonably and in good faith.

---

[10](...continued)
transaction or business.  36 Am. Jur. 2d Foreign Corps. § 45, comment.  Neither party offers
evidence regarding whether TCIE had business dealings in Maryland or any other state outside of
Belgium.  Indeed, there is no evidence in the summary judgment record where TCIE corporate
officers signed the loan documents.

See Amended Memorandum of Law of [TCIE], at 47 (citing App. VI, Ex. 2, Byttebier

Opening Report at 35, and App. VI, Ex. 8, Peeters Rebuttal Report at 8).

      Similarly, under longstanding Maryland caselaw, while "[t]he general rule

is that the power of an agent to bind his principal rests upon the authority conferred upon

him by the principal, and persons dealing with an alleged agent are put upon inquiry as to

the extent of his authority[,] . . . [a]pparent authority suffices to bind, whatever the scope

of actual authority, so that 'when a third party has ascertained the apparent authority with

which the principal has clothed the agent, he is under no further obligation to inquire into

the agent's actual authority.'"  Brager v. Levy, 90 A. 102, 104 (Md. 1914); see also

Schriefer v. Stewart, 892 F.2d 1041, 1989 WL 156878, at *16 (4th Cir. Dec. 27, 1989)

(unpublished) (quoting McClure v. E.A. Blackshere Co., 231 F. Supp. 678, 685 (D. Md.

1964) which was quoting Brager v. Levy).

      Pennsylvania also recognizes the binding effect of apparent authority:

> Apparent authority results from conduct by a principal which
> causes a third person to believe that a person has authority to
> enter negotiations or make representations as his agent.  See:
> Revere Press, Inc. v. Blumberg, 431 Pa. 370, 375, 246 A.2d
> 407, 410 (1968); Friedman v. Kasser, 332 Pa. Super. 475,
> 483, 481 A.2d 886, 890-891 (1984); Apex Financial Corp. v.
> Decker, 245 Pa. Super. 439, 443, 369 A.2d 483, 485 (1976);
> Essington Enamel Co. v. Granite State Fire Insurance Co., 45
> Pa. Super. 550, 558 (1911); Gizzi v. Texaco, Inc., 437 F.2d
> 308, 309 (3rd Cir.), cert. denied, 404 U.S. 829, 92 S. Ct. 65,
> 30 L. Ed. 2d 57 (1971); 18 P.L.E. Insurance § 34.  See also:
> Restatement (Second) of Agency, § 8.  If a third person
> changes his position in reasonable reliance on the principal's
> conduct, the principal is then estopped from denying the
> authority of the agent.  See: Friedman v. Kasser, supra ;
> Essington Enamel Co. v. Granite State Fire Insurance Co.,
> supra; Gizzi v. Texaco, Inc., supra; 18 P.L.E. Insurance § 34.

Stallo v. Insurance Placement Facility of Pennsylvania, 359 Pa. Super. 157, 162-63, 518

A.2d 827, 830 (1986).

Thus, Belgium, Pennsylvania, and Maryland all recognize and have similar

apparent authority principles and upon which Canam Group relies, even if TCIE had not

actually authorized the promissory notes and loan agreements under Belgian corporate

law.  And for purposes of these competing summary judgment motions, I am willing to

infer that the numerous loan agreements and promissory notes repeatedly signed by TCIE

corporate officers, coupled with the December 13, 1999 Consent in Lieu of Special

Meeting of the Board of Directors and the June 2001 Certificate of Corporate Resolution,

could support at trial that the signers on behalf of TCIE were cloaked with apparent

authority.  BOA had copies of these documents.  See Affidavit of Mary Giermek (Nov.

16, 2007).  And Mr. Wright deposed that the addition of the co-borrowers on the loan

agreements and promissory notes was at the insistence of BOA, not TCI.  Amended

Memorandum of Law of [TCIE] Appx. V, Ex. 13, at 60, 65.  One could reasonably infer

that BOA would not have entered into these loan transactions unless it believed that

TCIE had authority to become a co-borrower.[11]

---

[11]The defendant argues that the plaintiff has the burden to demonstrate that BOA's
reliance upon those documents reflecting TCIE's apparent assent to the loan was reasonable.  See
First Union Nat'l Bank v. Steele Software Systems Corp., 154 Md. App. 97, 190 (2003).  It
contends that BOA should have investigated Belgian law regarding corporate borrowing
authority.  And it offers a November 14, 2007 affidavit from BOA employee John P. McDuffie, ¶
4, that his review of BOA documents "does not clearly disclose" whether the lender's policy—to
seek counsel advice when lending to foreign corporations (which policy was "subject to various
exceptions")—was followed with respect to the TCIE loan documents.

Even if TCIE's legal contention is correct, for purposes of its summary judgment
motion, the factual issue of reasonable reliance by BOA is not undisputed.  Moreover, TCIE
assumes that any failing by BOA would preclude the assignee of the guarantor from seeking

(continued...)

Accordingly, for purposes of resolving these competing summary judgment

motions, and giving the non-moving party the benefit of all inferences, I conclude that

the plaintiff may be able to prove at trial that the promissory notes and loan agreements

were enforceable against the defendant, either via actual or apparent authority.

Furthermore, analysis of the plaintiff's two claims and the defenses thereto should be

resolved by application of Maryland law.


IV.


In Count I, Canam Group asserted that it repaid BOA in full and received

from that lender an assignment of the promissory note, allowing it to demand repayment

in full from any of the coborrowers, including TCIE.  In applying Maryland law to this

claim, as the plaintiff insists, I note that Maryland has enacted section 3-419 of the

Uniform Commercial Code.  That subsection provides:

> (a) If an instrument is issued for value given for the benefit of
> a party to the instrument ("accommodated party") and another
> party to the instrument ("accommodation party") signs the
> instrument for the purpose of incurring liability on the
> instrument without being a direct beneficiary of the value
> given for the instrument, the instrument is signed by the
> accommodation party "for accommodation".
>
> (b) An accommodation party may sign the instrument as
> maker, drawer, acceptor, or indorser and, subject to
> subsection (d), is obliged to pay the instrument in the capacity
> in which the accommodation party signs.  The obligation of
> an accommodation party may be enforced notwithstanding

---

[11](...continued)
recovery from TCIE in this proceeding.

any statute of frauds and whether or not the accommodation party receives consideration for the accommodation.

(c) A person signing an instrument is presumed to be an accommodation party and there is notice that the instrument is signed for accommodation if the signature is an anomalous indorsement or is accompanied by words indicating that the signer is acting as surety or guarantor with respect to the obligation of another party to the instrument.  Except as provided in § 3-605, the obligation of an accommodation party to pay the instrument is not affected by the fact that the person enforcing the obligation had notice when the instrument was taken by that person that the accommodation party signed the instrument for accommodation.

(d) If the signature of a party to an instrument is accompanied by words indicating unambiguously that the party is guaranteeing collection rather than payment of the obligation of another party to the instrument, the signer is obliged to pay the amount due on the instrument to a person entitled to enforce the instrument only if (i) execution of judgment against the other party has been returned unsatisfied, (ii) the other party is insolvent or in an insolvency proceeding, (iii) the other party cannot be served with process, or (iv) it is otherwise apparent that payment cannot be obtained from the other party.

(e) An accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party.  An accommodated party who pays the instrument has no right of recourse against, and is not entitled to contribution from, an accommodation party.

Maryland Code, Commercial Law, § 3-419.

The promissory notes signed by TCIE constitute negotiable instruments under Maryland's Commercial Code, see § 3-104[12]; Venners v. Goldberg, 133 Md. App. 428, 434 (2000), rendering section 3-419 applicable.  For example, the last renewed promissory note, dated May 11, 2001, Amended Complaint, ¶ 11, Ex. F; Answer, ¶ 11, provided to pay a fixed sum ($8 million), by a fixed date (maturity date of October 1, 2001), and stated that the "Borrower unconditionally (and jointly and

---

[12]Maryland Commercial Code § 3-104 states in relevant part:

(a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) Is payable on demand or at a definite time; and

(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.
                                        ***
(c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.

(d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this title.

severally, if more than one) promises to pay to the order of Bank[.]"  It contained no

impermissible undertaking within the scope of section 3-104(a)(3), nor a statement that it

was not negotiable.

Under section 3-419, even if TCIE received no consideration from the loan

made by BOA, as it contends, if it signed the promissory notes and loan agreements as an

accommodation party, it would be liable to BOA under section 3-419(b) of the Maryland

Commercial Code.  See Schaeffer v. United Bank & Trust Co. of Maryland, 32 Md. App.

339, 348-49 (1976); Ruane v. Jancsics, 2001 Mass. App. Div. 103 (2001); see also Home

Center Supply of Maryland, Inc. v. Certainteed Corp., 59 Md. App. 495, 505-06

(1984).[13]

To be classified as an accommodation party under section 3-419(a), TCIE

must have received no direct benefit from the BOA loan.  See Fithian v. Jamar, 286 Md.

161, 167 (1979) (a co-maker or co-borrower can be an accommodation party).  Canam

Steel, as guarantor, would also be an accommodation party.  Section 3-419(c); see Home

Center Supply of Maryland, Inc. v. Certainteed Corp., 59 Md. App. at 501-02; see also

17 M.L.E. § 33 (2007).  And as between two accommodation parties with the same

liability to the accommodated party, one who repays the obligation can only receive

proportionate contribution from the other.  See Fithian v. Jamar, 286 Md. at 169;

Maryland Code § 3-116; see generally 17 M.L.E. § 201 (2007).

---

[13]The issue of consideration may also be immaterial as the notes were sealed.  See
generally Venners v. Goldberg.

Accordingly, if TCI were the accommodated party and TCIE, ACI, RMI and Canam Steel were accommodators, Canam Steel could seek full recovery from TCI only.  It would be limited to contribution from TCIE, even though it obtained an assignment from BOA after repaying the loan in full.  See Fithian v. Jamar, 286 Md. at 170-71; Weitz v. Marram, 34 Md. App. 115, 120-21 (1976) (citing Restatement of Security § 141); see also Rodehorst v. Gartner, 266 Neb. 842 (2003); King v. Finnell, 603 P.2d 754, 757 (Okla. 1979); Schindel v. Danzer, 161 Md. 384 (1931).

Whether TCIE should be so treated—that is, did it receive any direct benefit from the BOA loan?—is not clear from the summary judgment record.  Comment 1 to UCC section 3-419 states in part:

> Subsection (a) distinguishes between direct and indirect benefit.  For example, if X cosigns a note of Corporation that is given for a loan to Corporation, X is an accommodation party if no part of the loan was paid to X or for X's direct benefit.  This is true even though X may receive indirect benefit from the loan because X is employed by Corporation or is a stockholder of Corporation, or even if X is the sole stockholder so long as Corporation and X are recognized as separate entities.

Comment 3 also notes that "whether a person is an accommodation party is a question of fact."  Since TCIE did not sign the promissory notes either as surety or guarantor, nor did it sign as indorser, it does not receive the benefit of the presumption found in section 3-419(c).  Thus, it has the burden of persuasion on this point.  See, e.g., Plein v. Lackey, 149 Wash. 2d 214, 223 (2003).

Certain aspects of the record support the notion that TCIE signed the promissory notes as an accommodation for TCI.  For example, only TCI was the original borrower on the initial loan agreement.  The guarantee signed by Canam Steel refers to its

35

status as TCI's preferred shareholder and makes no reference to the other borrowers.  The

addition of TCI affiliates to the BOA loan agreement appears to have been at BOA's

insistence.  Amended Memorandum of Law of [TCIE], App. V, Ex. 13, p. 60, ll. 15-24

("Bank of America required every subsidiary to be a guarantor under the agreement, so

[Pierre Desjardins] had all the current directors sign off either authorizing the CFO or it

might have been him also to negotiate that agreement.").[14]  In the same agreement adding

the co-borrowers, TCI and BOA amended their original loan agreement to define tangible

net worth as the amount by which TCI's assets exceeded its liabilities, rather than concern

the assets and liabilities of the borrowers.  Amended Memorandum of Law of [TCIE],

App. I, Ex. I(d).  A November 2007 affidavit signed by Mary Giermek, an employee of

BOA, declares that BOA "relied solely on the financial strength of . . . Canam Steel" in

connection with the loan.  TCIE Notice of Supplemental Filing of Affidavits, Ex. A, ¶ 3.

In addition, Mr. Kennedy stated in his deposition that he was unaware of any BOA loan

funds paid directly to TCIE.  Amended Memorandum of Law of [TCIE], App. III, Ex. 11,

pp. 5-7; Canam Group's Reply to Response to Motion to Strike, Ex. D, pp. 5-7.

 However, both Mr. Kennedy and Mr. Wright stated that TCIE received

funds from TCI as working capital, received favorable terms from TCI for materials sold,

and Mr. Wright opined that certain patents and trademarks were financed by the BOA

line of credit.  Id.; Canam Group's Reply to Response to Motion to Strike, Ex. I.  While

---

[14]In the same deposition, regarding the December 13, 1999 Consent in Lieu, Mr.
Wright stated "The sole and only purpose of this document is to give TCI the authority to sign
into a bank credit line agreement and that would be on behalf of TCI – well, I should say on
behalf and a guarantor of that agreement was going to be TCIE.  And that is the sole purpose of
that document."  Amended Memorandum of Law of [TCIE], App. V, Ex. 13, p. 119, ll. 19-24.

some of these benefits, if true, would be indirect, see generally Citibank (Arizona) v. Van Velzer, 194 Ariz. 358, 360-61 (Ariz. App. Div. 2 1998), others may be considered direct. The Fourth Modification of the Loan Agreement required that all of the co-borrowers submit financial statements to BOA. Amended Complaint, Ex. E. Thus, as the status of TCIE as co-maker is not clear, summary judgment on Count I cannot be granted for either party. See also King v. Finnell, 603 P.2d at 758.

TCIE cannot be granted summary judgment on Count I because its defense that it was released by BOA is ineffective as a matter of relevant Maryland law. Its alternative contention, that it never properly signed any loan agreements or promissory notes, could be undermined at trial by actual or apparent authority, giving the plaintiff the benefit of all inferences from the record made by the parties. And, to the extent that Canam Group can prove a valid assignment from Canam Steel, the former may be entitled to contribution, if not reimbursement, of funds that the latter paid to BOA on the TCIE loan, even if it were proven that TCIE received none of the loan proceeds.[15]

Canam Group is not entitled to summary judgment as to Count I because the status of TCIE as loan obligor remains at issue, as is the question of corporate authority and reasonable reliance. Moreover, so is the amount paid by Canam Steel on this BOA loan. As discussed earlier, Canam Steel appears to have paid BOA $1 million less than the stated payoff figure. The summary judgment record does not explain the

---

[15]Because an accommodation party need not receive consideration in order to be liable, I need not decide the plaintiff's motion to strike the recent affidavits of George L. Miller and Peter Soenen (Exs. I and J), which declared that the TCIE documents they had seen did not reflect any payments from BOA or any loan obligations to that entity. Canam Group argues that neither declarant can authenticate those documents nor vouch for their completeness.

reason for this discounted payment nor its allocation among the various obligations of

Canam Steel to BOA.  Furthermore, the record regarding the assignment of rights from

Canam Steel to Canam Group is unclear.


V.


For similar reasons, summary judgment is not appropriate for alternative

Count II: unjust enrichment.

Under Maryland law "Unjust enrichment consists of three elements:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the
benefit; and

3. The acceptance or retention by the defendant of the benefit
under such circumstances as to make it inequitable for the
defendant to retain the benefit without the payment of its
value.

Hill v. Cross Country Settlements, LLC,  2007 WL 4225135, at *3-*4  (Md. 2007); see

also Mona v. Mona Electric Group, Inc., 176 Md. App. 672, 934 A.2d 450, 473 (2007).

Repayment of a debt owed by another is sufficient under Maryland law to confer the

requisite benefit.  Id., at *5.

Without addressing the last two elements of unjust enrichment, the extent of

the benefit to TCIE provided by Canam Steel's payment to BOA on the loan guarantee

depends upon the extent of TCIE's liability in the BOA loan transaction.  As that is

factually unclear for purposes of summary judgment, as just discussed, Count II cannot

now be adjudicated.  Also, the issue of Canam Group status as assignee of whatever claim

that Canam Steel held against TCIE needs to be proven at trial.[16]

Accordingly, both plaintiff's and defendant's motions for summary

judgment must be denied.  An appropriate order will be entered.

---

[16]TCIE also argues that the statute of limitations for reimbursement actions precludes assertion of Count II.  The statute of limitations for civil actions at law is three years in Maryland, Md. Stat. Ann. § 5-101; see Ver Brycke v. Ver Brycke, 379 Md. 669, 688 (2004) (§ 5-101 applies to claims for unjust enrichment), and four years in Pennsylvania.  42 Pa. C.S.A. § 5525(a)(4) (contracts implied in law).  Where the payment of the debt of another creates the benefit for which unjust enrichment is sought, the limitations period begins to run from the date of the payment.  See Read Drug and Chemical Co. v. Colwill Construction Co., 250 Md. 406, 422-23 (1968); see also Bishoff v. Fehl, 345 Pa. 539, 543 (1942).

Here, Canam Steel paid BOA on March 30, 2005 and the amended complaint adding Count II was filed June 6, 2007 (Canam Group agreed that the count did not have to relate back to the original filing of the complaint on May 31, 2005).  That is less than three years from the date of payment; therefore Count II is timely.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| TOTAL CONTAINMENT, INC. | : | |
| Debtor | : | Bankruptcy No. 04-13144bf |
| | | |
| CANAM GROUP, INC. | : | |
| Plaintiff | : | |
| v. | : | |
| TCI ENVIRONMENT NV/SA | : | Adversary No. 06-0647 |
| Defendant | : | |

..................................................

ORDER

..................................................

AND NOW, this 29th day of January 2008, for the reasons stated in the accompanying memorandum, it is hereby ordered that the cross-motions of the plaintiff and defendant for summary judgment are denied.

It is further ordered that a final pretrial conference will take place on March 7, 2008 at 10:00 a.m. in Bankruptcy Courtroom #2 to determine a trial date and to address possible collateral estoppel issues concerning Adv. No. 05-0145. The parties shall file a joint pretrial statement consistent with Local Bankr. R. 7016-1 by February 29, 2007.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Phillip E. Wilson, Jr., Esq.
DLA Piper US LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Jeffrey D. Herschman, Esq.
DLA Piper Rudnic Gray Cary US, LLP
6225 Smith Ave
Baltimore, MD 21290

Craig Martin, Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street
Wilmington, DE 19801

Ms. Barbara Townsend, Courtroom Deputy